STATE OF IOWA, Appellee, v. E. F. POWERS, Appellant.

GRAND JURY: Number—Deficiency—Failure to Object — Effect.
1 The acts of a grand jury of 7, drawn from a panel of 11 instead of 12 names, are not wholly void, and are unimpeachable *by one duly held·to answer*, unless objected to at the time of impaneling. (See Sections 339, 5321, Code, 1897.)

CRIMINAL LAW: Preliminary Information—''Holding to Answer''
2 —Sufficiency. A sufficient "holding to answer" is shown by the entry by a committing magistrate of the following order, to wit: "I have ordered that he (accused) be held to answer the same." (See Section 5230, Code, 1897.)

INDICTMENT AND INFORMATION: Requisites and Sufficiency
3 —Venue. Venue is sufficiently laid if· the court, irrespective of punctuation or paragraphing, can determine that such venue is laid in a specified county.

INDICTMENT AND INFORMATION: Requisites and Sufficiency—
4 Duplicity. An indictment charging an assault with intent to rape *and carnally abuse* is not subject to the vice of duplicity. (See Section 4756, Code, 1897.)

JURY: Competency — Disregard of Interpreter. One who posi-
5 tively says on oath that he understands a foreign language and will be controlled by his understanding of what he hears the witness say in such foreign language, irrespective of· what the official interpreter of the language may say, is a wholly incompetent juror.

JURY: Competency—Doubtfulness—Duty of Court. When the
6 competency of a proposed juror is manifestly doubtful, it is the duty of the court—at least the safer course—to sustain the challenge.

So held where a juror who understood a foreign language stated that he would be *"inclined"* to follow his own understanding of what the witness said in said language, irrespective of what the official interpreter might say.

So held also where a witness stated he could not write the English language, but later, under pressure, stated he could not write it very well, and had never learned to read the English language much.

CRIMINAL LAW:    Trial—Indorsement of Witnesses on Indict-
ment—Interpreters.  The name of one who is used as an inter-
preter of witnesses who testify in a foreign tongue need not
be indorsed on an indictment.   (Section 5373, Code Supple-
ment, 1913.)

EVIDENCE:    Hearsay — Interpreters.    On  who  interprets,  for
court and jury, the testimony of a witness who speaks in a
foreign tongue, does not give hearsay testimony.

APPEAL AND ERROR:    Assignment of Error—Sufficiency.   An
assignment "that the court erred in not excluding the question
'What did she say?'" or "that the court erred in not granting
a new trial because the whole record discloses that defendant
was deprived of a fair trial," raises no reviewable question.

WITNESSES:    Competency—Refreshing Memory—Absence of In-
dependent Recollection.   A witness may not be permitted to
refer to a writing, even though made by himself, and read
therefrom, when at said time he has no past or present inde-
pendent recollection of the accuracy thereof.

RAPE: Assault With Intent—Evidence—Subsequent Acts.   Acts
by defendant with reference to the same prosecutrix, though
subsequent to the occurrence charged in the indictment, are
admissible when tending to prove that the defendant's mental
attitude was such as to make it probable that the offense
charged was committed at an earlier time.

RAPE:    Evidence—Complaints by Prosecutrix—Details.   Evidence
of a complaint by prosecutrix to the effect "that she said to him
(the witness) that defendant threw her down at the cob pile
and tried to have sexual intercourse with her" is not objection-
able as going into nonallowable detail, but the rule allowing
the showing of complaints by prosecutrix cannot by any possi-
bility be so stretched as to permit a long, detailed, and minute
recital of the facts leading up to and culminating in the com-
mission of the offense.

RAPE:    Evidence—Nonvoluntary Complaint by Prosecutrix.   Non-
voluntary complaints by prosecutrix of a sexual outrage upon
her—those extracted from her by a process of cross-examina-
tion—are wholly inadmissible as *complaints*.   Evidence re-
viewed, and held to show that the alleged complaints in ques-
tion were nonvoluntary.

RAPE:    Evidence—Corroboration—Total Failure.    Evidence re-
viewed, and held to disclose a total failure of corroborative
testimony.

RAPE:    Evidence—Corroboration—Complaints by Prosecutrix.    Prin-
ciple recognized that complaints by a prosecutrix of a sexual
outrage upon her are not corroborative of her testimony, as
required by statute.    (Section 5488, Code, 1897.)

RAPE:    Evidence—Corroboration—Sufficiency.    Evidence that de-
fendant, in a prosecution for assault with intent to rape, had
mere "opportunity" to commit the offense, and had stated that
he "kidded" or "joshed" the girl, constitutes no corroboration
as required by the statute.    (Section 5488, Code, 1897.)

RAPE:    Assault With Intent—Instructions—Included Offenses—
Assault and Battery.    Under a charge of assault with intent
to rape "by force," etc., the included offense of assault and
battery should always be submitted when the evidence is such
as will sustain a verdict for such included offense.

RAPE:    Assault With Intent—Included Offenses—Great Bodily
Harm.    An assault with intent to inflict great bodily injury is
not necessarily included in an assault with intent to ravish.

RAPE:    Assault With Intent—Included Offenses—Felonies Gener-
ally.    An assault with intent to commit rape is one with intent
to commit a felony, but it does not follow that, therefore, it
was error not to submit an assault with intent to commit
felony generally.

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

THURSDAY, OCTOBER 25, 1917.

INDICTMENT charging assault with intent to commit rape. Defendant was found guilty as charged, and appeals. —*Reversed and remanded.*

*Brown McCrary* and *Ralph Maclean,* for appellant.

*H. M. Havner,* Attorney General, and *H. H. Carter,* Assistant Attorney General, for appellee.

SALINGER, J.—I. The grand jury im-
paneled for the year 1915 consisted of 12 per-
sons, until the February term of that year,
when one of the members of that body was
dismissed by the court for the rest of the year. No one
had been drawn to fill the vacancy thus created. The panel
which indicted this defendant had its 7 members drawn
from this 11, and it is urged that drawing from the 12 is
essential to a legal grand jury. While we think that a jury
thus drawn is subject to challenge, we do not agree with the
appellant that it is in law no grand jury at all, and that
its acts are void though not challenged. The State relies
upon Section 5321 of the Code, which is that, where one has
been held to answer, if he does not appear and object to the
impaneling of the grand jury at the time, he will be held to
have waived objections thereto. In effect,
the appellant concedes that this avoids his
point, if he has been held to answer within
the meaning of the law, and he insists that
this has not been done. As we gather the
argument, this is said to be so because the committing
magistrate concluded his record merely with the statement:
"I have ordered that he be held to answer the same." That
is substantially in the language of the statute, which is: "I
order that he be held to answer the same." Code Section
5230. Upon the making of this order, the defendant gave
bond that he would appear "at the district court of Carroll
County, Iowa, at the next term thereof, and answer said
charge and abide the orders and judgment of said court."
The terms of court are fixed by law, and persons held to ap
pear must take notice thereof. Code Section 232. We
think he was bound to appear and answer at the term dur-
ing which he was indicted. This being so, by failing to ap-
pear and challenge the panel, he waived the point he now
makes.

*Margin notes:*

1. GRAND JURY: number: deficiency: failure to object: effect.

2. CRIMINAL LAW: preliminary information: "holding to answer:" sufficiency.

II.   The indictment is in this form:

**3. INDICTMENT AND INFORMATION: requisites and sufficiency: venue.**

"That said E. F. Powers on or about the 3d day of September, A. D. 1915, in the county of Carroll, in the state of Iowa.

"The said E. F. Powers on the 3d day of September, A. D. 1915, did," etc.

By objections to testimony, requests to charge, and by motion to direct, it was asserted that this indictment does not lay the venue in Carroll County, it being urged in support that there is no compliance with Code Section 5289, which requires the venue to be alleged in the charging part of the indictment, and that the indictment is insufficient under the rule that the venue must be expressly averred, as distinguished from inference or suggestion (*State v. Daily,* 113 Iowa 362), and that indictments may not be aided by intendment. *State v. Ashpole,* 127 Iowa 680.

Despite the paragraphing and punctuation as above shown, and which are what appellant relies upon, we think venue was clearly laid in Carroll County.

### 2-a

**4. INDICTMENT AND INFORMATION: requisites and sufficiency: duplicity.**

We do not think that the indictment is open to the objection of duplicity for charging as distinct offenses assault with intent to rape, and also an assault with intent to carnally abuse.

**5. JURY: competency: disregard of interpreter.**

III.   Six who became members of the jury against challenge said in the most positive way that they would fully understand what a witness testifying in the German language said; that they would proceed according to that understanding without regard to its translation by the interpreter.  Four upon whom appellant was compelled to use peremptory challenges testified to the same effect.  As we understand it, the State attempts to sustain the rulings

holding that this state of mind did not disqualify, as follows: (1)  It is neither claimed nor shown that anything was incorrectly interpreted.  On the contrary, as the interpreter is an officer of the court, it is presumed he translated correctly.  This being so, the jurors but heard told in German what the translator presented in English—wherefore, that their state of mind led them to follow the witness rather than the interpreter was without prejudice.   (2)   It is presumed the jury followed the interpreter, because the court charged them to do so.

Each of these men had said positively upon his oath that he would be controlled by what he heard the witness say in the foreign tongue, no matter what the interpreter said.   To indulge a presumption that they followed the charge of the court is to presume that they did that which they swore they would not do.   It gets nowhere to admit that the translation was correct, so long as, though correct, the jurors did not follow it, if, perchance, they thought it was incorrect.  As the business of our courts is to be done in English, there can be no presumption that either defendant or his counsel or the court understood German.  If it be presumed that they did, there is no machinery for making that understanding of use.  What if defendant knows that the translation be in fact a true rendition of what the witness has said, how can defendant know that such is the opinion of the jurymen who had said they would do their own interpreting?  Suppose, as translated, nothing is developed that calls for counter proof, but the understanding these jurors had does—what opportunity has the defendant to even know that he requires testimony which he could obtain and which might change the result if produced?  Though there be a presumption that the interpreter translated aright, is there also one that all other men agree to that translation?  We have indicated there is no machinery

to meet the situation other than rejecting men in such frame
of mind.   When and how is the defendant to ascertain
whether the jurors were agreeing with the interpreter, dis-
agreeing with him, and, if so, in what way?   How may he
accomplish that the jury shall consider only what is in
fact the testimony given in the German language?   The
situation was greatly aggravated by refusing to compel an
examination by question instead of lengthy statement in
narrative form, which practically reduced objecting to mo-
tions to strike.   The whole of it is fairly within *Smith v.
State*, 42 Tex. 444, wherein, on trial of one charged with
theft of an animal, the jury was permitted to leave the court
room and inspect for themselves the animal alleged to have
been stolen, with a view of thus solving in connection with
the evidence detailed by witnesses the question of identity
and ownership, and no evidence was detailed by any of
them on their return into court as to what they discovered—
and it was held that a verdict upon facts thus ascertained
would be a finding on facts known only to the jury—not
publicly developed on the trial—concerning which defend-
ant had no opportunity to cross-examine them as witnesses,
upon which defendant or his counsel had not been heard.
and of which the judge had no information.   We think that,
clearly, these six should not have been permitted to serve.

One juror who was permitted to serve
6. JURY: compe-     did not go so far as this.   He simply said
   tency: doubt-
   fulness: duty    he needed no interpreter for a German wit-
   of court.        ness because he would know without one
what was testified to; that he would notice whether the in-
terpreter gave the right interpretation and would be inclined
to proceed on the testimony of the witness regardless of the
interpreter.   As said, this is not so flagrant.   But even he
was a manifest threat to fair trial, and material for jury is
not so scarce as to require retaining him.   At the least,

there was a manifest doubt as to his qualification, and it certainly was the safe and better course to have resolved the manifest doubt in favor of exclusion.  See *State v. Teale,* 154 Iowa 677; *State v. John,* 124 Iowa 230; *State v. Crofford,* 121 Iowa 395.

One of the jurors who was permitted to serve, and one who said he would be controlled by the witness, said at first that he could not write English.  Under some pressure, he modified it by saying that he could, but not very well, and that he never learned to read the English language much. What we have said just preceding this applies here.  Nothing cited runs counter to our conclusions.  *State v. Smith,* 124 Iowa 334, affirms sustaining a challenge interposed by the State as being no abuse of discretion.  *State v. Brown,* 130 Iowa 57, holds merely that, if a juror is not shown to have formed or expressed such an opinion of guilt or innocence as to prevent rendering a true verdict on the evidence, the discretion of the court in overruling a challenge will not be interfered with.

IV.  It is said the court erred in ruling that the interpreter was not in such sense a witness as that he might not testify without having his name endorsed upon the indictment.  As to the only objection we find,

**7. CRIMINAL LAW: trial: indorsement of witnesses on indictment: interpreters.**

ruling was reserved, and none ever made.  Be that as it may, we are of opinion that the interpreter is not in such sense a witness.  See Standard Dictionary, definitions of '"interpreter" and "witness."

V.  It is contended that taking testimony through an interpreter is receiving hearsay testimony.  We think the great weight of authority is against this claim.  See 1 Wharton, Evidence (1877), Sec. 224; *Fabrigas v. Mostyn,* 20 Howell's State Trials 82; *McCormicks v. Fuller & Williams,* 56 Iowa 43; *Camerlin v. Palmer Co.,* 92 Mass. 539; *People v. Ramirez,*

**8. EVIDENCE: hearsay: interpreters.**

56 Calif. 533; *Commonwealth v. Sanson,* 67 Pa. St. 322; *Swift v. Applebone,* 23 Mich. 252, 253. The only case we can find even leaning to the contrary is *Diener v. Schley,* 5 Wis. 483, to the effect that, while the interpreter may be made an agent, so that what he says on behalf of his principal is not hearsay, that he is not necessarily such agent, and is not made so merely by the fact that his alleged principal is dealing through an interpreter with a party whose language he does not understand; that this naked fact will not constitute such an agency as that it will bind by false translation.

9. APPEAL AND ERROR: assignment of error: sufficiency.

VI. Many errors are assigned, of which a statement that the court erred in not sustaining objection to the question to Barney Korwes, "What did she say, if anything," is a sample—and by no means the worst. We cannot review upon such a complaint; and so of one that it was error not to grant a new trial because the whole record discloses defendant was deprived of a fair and impartial trial.

10. WITNESSES: competency: refreshing memory: absence of independent recollection.

VII. Objections were made to the testimony of May Thompson, which are clearly not well taken, unless it be one now to be noted. The witness had taken in shorthand everything that was said on the preliminary hearing of the defendant. On this trial, she testified she has no independent recollection of what was then said, but that she extended the shorthand notes of what was said for the use of the grand jury. At this point, the court held that the transcript of these notes might not be introduced in evidence because it was not attached to the indictment, but that the witness could testify from the original shorthand notes, after refreshing her memory therewith. Being further examined, the witness said: "I do not remember the evidence of the shorthand notes. It is the paper I am reading that I am testifying to." We think it was error to permit her thus to testify, to virtually put in evidence the paper which

the court said might not be used.  We said in *Eaton Chem-ical Co. v. Doherty,* (N. D.) 153 N. W., at 969:

"The entries made upon the books of the plaintiff in this case furnished the best evidence of such charges.  The testimony of Collins as to the contents of such entries was therefore inadmissible.  * * * * it is said in Elliott on Evidence:  'It is essential, however, that, upon referring to it, his recollection should be so refreshed that he can speak to the facts from memory; that is, after referring to it he should be able to testify from his own recollection.' "

VIII.  Certain testimony was offered

**11. RAPE: assault with intent: evidence: subsequent acts.** tending to show that, at a time later than the one at which it is charged the offense was committed, defendant again came upon the place, and conducted himself in such manner as to evince an intent to repeat the offense.  Objections that this is too remote and is subsequent to the time covered by the indictment, and the like, were overruled, the court saying: "I presume this is in the nature of a preliminary."  If believed by the jury, this had a tendency to prove properly that the mental attitude of the defendant was such as to make it probable the offense charged was earlier committed.  While it adds nothing to corroboration, it did add to the testimony given by the prosecutrix.  Moreover, the court instructed that this was admitted solely on "whether or not it tends to identify the defendant as having been on the Korwes place on the 3d day of September, 1915."

IX.  In *State v. Richards,* 33 Iowa 420,

**12. RAPE: evidence: complaints by prosecutrix: details.** 421, an uncle of prosecutrix's testified she told him that defendant had committed rape on her; "that, in trying to get away from Richards, in the struggle she fell down; that she then managed to get away from him and went into another room; that there he threw her on the floor," etc.  We hold it is a

well settled rule that, where the prosecutrix is examined as a witness, "the *fact* of her making complaint is evidence, but the *particulars* of such complaint are not." We say that the rule as laid down by Greenleaf is as follows:

"The particular facts which she stated are not admissible in evidence, except when elicited in cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination, the practice has been merely to ask her whether she made complaint that such an outrage had been perpetrated upon her, and to receive only a simple yes or no."

In *State v. Egbert,* 125 Iowa 443, we say:

"Of course, the fact of complaint by prosecutrix may be shown, and no doubt as a witness she may testify that she recognized the defendant as the person who committed the crime, but what she said is not in itself competent evidence on the question of identity."

But we have departed from these close limitations. We say, in *State v. Bebb,* 125 Iowa 494, 497, that complaint is not inadmissible because it discloses pain, grief, humiliation, indignation, mortification or resentment, directly occasioned by the outrage. And so of a statement that prosecutrix had pain in the stomach, across her back and in her throat. *State v. Baker,* 106 Iowa 99. In *State v. Mitchell,* 68 Iowa 116, at 118, we sustain receiving that prosecutrix told her that she had been abused and ravished. We said, in *State v. Peterson,* 110 Iowa 647, at 650, that complaint to the effect that defendant did assault or ravish complainant is admissible. It is admissible that defendant had ravished or had intercourse (*State v. Watson,* 81 Iowa 380); that defendant abused her without her consent (*State v. Cook,* 92 Iowa 483, at 486). In *McMurrin v. Rigby,* 80 Iowa 322, at 325, the complaint that prosecutrix "was hurt in the most brutal way anyone could be hurt," was held to amount to no

more than a statement that plaintiff had been ravished, and, therefore, admissible. The general rule has been relaxed on expressed ground that prosecutrix was of very tender years, and on that account, held proper to receive that defendant had intercourse against the will of complainant (*State v. Symens*, 138 Iowa 113) ; that she complained of "that nasty, bad man (speaking of defendant), and that she complained of this man putting his bean up against hers" (*State v. Hutchinson*, 95 Iowa 566) ; and ·statements immediately after the assault—one to her father, that defendant "threw her down and raised her clothing," and to the mother, that defendant "threw her down, unbuttoned her panties, and hurt· her" (*State v. Andrews*, 130 Iowa 609, at 610). In *State v. Barkley*, 129 Iowa 484, at 486, testimony was received 'that (1) prosecutrix said' defendant "had torn her clothes open ;" (2) that he entered her private parts with his against her will. We said the last was properly received, but that the first should have been excluded "as a detail of the occurrence."

The court permitted much testimony, which, under the most liberal of these, should clearly have been excluded. Sturm was permitted to say prosecutrix told him that two fellows whom she did not know came upon the place while the door was open and the screen closed; that the smaller of the two came to the screen door and asked if Korwes was at home, and was answered he had gone to town; that he asked for a drink of water; that she turned and went into another room, and they followed her; that then he returned to the car and the two men spoke together; that the men were very insolent, one went up to her and asked her to come into the granary; that she retreated, and he went up to her closer, and, all at once, he jumped against her and got her against the cob pile and got her by the legs and pulled her down and had his trousers open and exposed his private

part, raised her skirts, touched her, and tried to accomplish his purpose to get his privates in her, and she was fighting all the time. ˙ She told him there was a hired man at the barn, and he said he didn't believe it, and he shook his head that there was no hired man at the barn, and she kicked and took corn and kept hitting him, and she kicked the buttons off her shoes, and the buttons flew away from her buttoned shoes by kicking him, and she was trying to keep him away and moving and fighting with him all the time, and he tried to insert his privates in her, and then he said to keep still a little, but she would move all the time and fought all the time, and he had a discharge right on her side, and she was fighting all the time to keep the thing out of her so it would not enter into her, and finally he got up and let her go.

But the question is not whether this should have been received, but whether its reception was cured. At the end of it, the court struck out all except "that she said to him that he did throw her down at the cob pile and tried to have sexual intercourse with her." We incline to think that this much was not vulnerable to the objection that it improperly went into detail. Korwes was permitted to testify, over apt objection, prosecutrix told him that a fellow was there who asked for water; that she turned around to give him a glass of water; that he got pretty saucy and grabbed her; that she went into another room; that he followed her and grabbed her again; that she got away from him and then she walked out doors; that, at a time about a month later, defendant tried to get her into the barn. We are of opinion that this should have been excluded.

But whether or not what Sturm says is an improper entry into detail, we have the question whether the complaint involved therein was voluntarily made. He testifies she said "they were insolent;" that then he

13. RAPE: evidence: non-voluntary complaint by prosecutrix.

asked her two questions, in response to which she said that
defendant was very insolent. She told him this fellow was
there, "so I questioned her, began to question." In response
to the questions, she said they wanted a drink of water and
she turned around; that she went into the other room and
they followed her "and were very insolent." Sturm then
said to prosecutrix, "Did they lay hands on you; did they
insult you?" and that she answered, "Yes," and that what
she then said further brings him back to the house where
it happened, and then what happened on the cob pile, "She
told me everything." This is followed by a narration of
what is already set out, beginning with the asking her to
come into the granary. The matter testified to was inad-
missible because it was not the voluntary statement of prose-
cutrix. See *State v. Bebb,* 125 Iowa 494, at 497; *State v.*
*McGhuey,* 153 Iowa 308, at 313.

X. The law prescribes no standard for the strength
of corroborating evidence, and there is a failure to corrob-
orate only if there be no evidence legitimately having that
effect. Does this case have anything that the law deems
corroborative?

14. RAPE: evi-
dence: cor-
roboration:
total failure.

No chain can be stronger than its weak-
est link; therefore, corroboration is essential
to conviction. It is a distinct part of the
evidence required to establish the crime.
*State v. Cohen,* 108 Iowa 208; *State v. McCracken,* 66 Iowa
569. The very words of the statute preclude corroboration
coming from the mouth of the complainant. Code Section
5488. And see *State v. Carpenter,* 124 Iowa 5, at 15; *State*
*v. Watson,* 81 Iowa 380, at 387. This seems to have been
overlooked in *State v. Peterson,* 110 Iowa 647, at 649, for

15. RAPE: evi-
dence: cor-
roboration:
complaints by
prosecutrix.

that it is there indicated that the making
of complaint is a corroborative circum-
stance. The citations relied on there do not
sustain any such rule, and we have held,

both before and since the decision of the *Peterson* case, that complaint and still other things afford no corroboration. We said, in *State v. Baker*, 106 Iowa 99, that, where it is admitted someone committed the assault, complaints of pain admitted or received were not prejudicial, since such testimony does *not* connect accused with the assault. To like effect is *State v. McGhuey*, 153 Iowa 308, and it is there said that neither complaints nor evidence that the person of prosecutrix exhibits injuries constitutes corroboration. The fact that such complaint is made removes a suspicion, and the fact of making complaint and so of proving injuries to the person sustains proof of the *corpus delicti*. And evidence of complaints can only be considered as confirming or disparaging the accuracy and veracity of the witness. In *State v. Wolf*, 112 Iowa 458, at 461, and in *State v. Bebb*, 125 Iowa 494, we hold that proving complaint merely affects the credibility of the prosecutrix as a witness on whether the assault was made at all. In *People v. Page*, (N. Y.) 56 N. E. 750, it is expressly held that while disclosures made by the female within a reasonable time after the outrage are admissible as part of the *People's* case, they do not constitute corroboration tending to establish connection of the accused with the crime.

Moreover, it is the law of the case, by means of charge to the jury, that what the prosecutrix told others as to having been assaulted, and the testimony of these that she did so tell them, merely show the making of a complaint the failure to make which would weaken the weight of prosecutrix's testimony; but that such evidence may not be considered "as the corroboration called for in the foregoing instructions."

There is testimony that defendant informed Tigges, while defendant was away from the car, and at the house where the girl was, and told others, that he was "kidding

16. RAPE: evidence: corroboration: sufficiency.

the girl;" that he "kidded her a little bit and talked to her, but couldn't understand her;" that she smiled all the while, while he was kidding her; that when Tigges inquired why he had not returned sooner, he said he was "joshing the girl." Unless the saying this can be strained out of all its accepted meaning, it in no manner connects the defendant with the offense charged. According to the International Dictionary, "to kid" means to humbug or deceive in joke. "To josh" means to ridicule or tease, or make fun of in a joke, to lure or tease by misrepresenting the facts. In *People v. Page*, (N. Y.) 56 N. E. 750, at 751, it is ruled that it was not corroboration that defendant had said he had "insulted the girl."

### 10-b

In *State v. Herrington*, 147 Iowa 636, at 640:

"Defendant was a witness in his own behalf, and his own testimony was such as to leave no doubt of his guilt in the light of the other testimony in the case."

In *State v. Hogan*, 145 Iowa 352, at 355, we find corroboration in the testimony given by defendant. In *State v. Mitchell*, 68 Iowa 116, 118, there were marks of violence upon prosecutrix, and defendant undertook to account for these injuries by a statement which was false.

So far as this defendant is concerned, his testimony corroborates nothing said by the prosecutrix, except that he did get a pail of water to put into his car, and that, while getting the water, he talked to her just once. Tigges says that going back with the pail to get water, getting the water and returning with it, did not take defendant away from him over 10 to 15 minutes. The testimony of Thompson we have held not to be admissible, but, waiving that, it is no more than that the defendant said on his preliminary examination that prosecutrix went to the door and into the house, and that he went up to the door and rapped on it. It may

not be denied that it was not an impossibility for defendant to commit the offense as charged. It may be conceded there was opportunity to commit it. Unquestionably, it is established that the defendant was present where he could make this assault. Beyond doubt, opportunity, coupled with some other things, may send corroboration to the jury. See *State v. Egbert,* 125 Iowa 443, at 448; *State v. Stevens,* 133 Iowa 684. But we know of no decision that has gone to the length of holding that the naked opportunity to commit a crime constitutes sufficient corroboration. If, for instance, there were evidence that the opportunity was manufactured under suggestive circumstances, a different case would be present. Here, it is without dispute that the defendant was at the place merely because, hours before, Tigges asked him to take a ride in his car, into the country generally; that Tigges had business with the owner of the place where defendant was; that he went there on that business and found the owner away. There is not a scintilla that, when the trip began, the defendant knew he was going upon this place, or that either knew the owner was away from home. It would be a different case, too, if, in addition to showing that defendant had opportunity to commit the offense, it was of such nature as that, if committed at all, it could not have been committed by anyone other than defendant. *State v. Stevens,* 133 Iowa 684, 686, is such a case. It declares "it affirmatively appeared" from the testimony of others that accused was the only person in the house at the time the assault was committed who was capable of committing it, and it is very properly said that this is more than proof of mere opportunity. Moreover, there were certain "immediate circumstances corroborating her testimony that the crime was committed at that time." Now, there can be no claim of that kind made here. It was *possible* for Tigges to assault the prosecutrix. It was *not impossible* that the two men to whom she spoke at a time

which she claims was immediately after the assault might commit the assault. The prosecutrix herself told Korwes that she wouldn't stay home any more, "as there always came fellows around there." She told Korwes that three automobiles had been at the house that day; says it may be possible she told Korwes that two or three automobiles came there in September with men looking for Korwes; that possibly two were there on that day in September; and that they may have been men from Templeton whom she didn't know.

We have found no case wherein what here is shown makes corroboration a jury question. In *State v. Herrington*, 147 Iowa 636, at 639, we say:

"The corroborating evidence in the case is unusually prominent. * * * * the defendant's own testimony was abundant corroboration tending to connect him with the offense. In addition to that, was the testimony of his landlady who discovered the presence of the prosecutrix, and forbade the defendant from keeping her. There was considerable other testimony of greater or less weight, all of which confirmed the testimony already referred to."

In *State v. Hogan*, 145 Iowa 352, at 355, we find corroboration in the testimony of the defendant himself, and added testimony of another, who testifies seeing defendant in such position with the prosecutrix that he reported the matter at once to the public officers. We find further corroboration in the testimony of the sheriff who made the arrest, and in a conversation of defendant detailed by another witness, and we conclude the corroboration "was practically conclusive." In *State v. Dudley*, 147 Iowa 645, the father saw defendant in a room with prosecutrix shortly after the alleged offense, the latter sitting on the bed with clothes "ruffled up" and her hair down over her face and eyes. In *State v. McCausland*, 137 Iowa 354, at 357, we said

that the corroborating evidence "was of such clear and pointed character that a verdict of acquittal could not have been reasonably expected." One of the items is that defendant was seen piloting a young girl, from a place where they were first seen, through a street, up on a flight of stairs from which they entered a darkened room, which was the scene of the crime; and we add that "other circumstances significantly pointing in the same direction might be mentioned." In *State v. Comstock*, 46 Iowa 265, 268, it was found that, the morning after the crime was perpetrated, at a time when the injured woman had revealed it to but two persons, to whose house she had fled for safety after the outrage, bearing marks upon her person and declaring the crime, and its atrocious character,—when no other persons were informed thereof,—defendant made inquiries of a son of the persons of whom she had sought protection in regard to her declarations about the matter, and declared that, if he belonged "to the Masons or Elder Davis clique, he would get clear." In *State v. Ralston*, 139 Iowa 44, at 47, one item of corroboration as to an assault in which prosecutrix was stripped, was that she reached the house of a neighbor naked and screaming, defendant admitting that she left the house in that condition. In *State v. Watson*, 81 Iowa 380, at 388, the defendant had been in the habit of sending away a little sister of prosecutrix when she would attempt to play in a seed house where the crime is said to have been committed, and to send her away because the seed house was small and had no room to play in. At the time in question, the little girl heard a cry, and went out to go to the place where she heard it. She had not reached the seed house, and was not going there, but was running past it to the barn, when defendant left his work in the seed house, and, though she did not offer to come in, threatened to whip her if she did not go back. And *State v. Bartlett*, 127 Iowa 689, at 691, holds corroboration sufficient

to make a jury question where it amounted practically to testimony of an eyewitness to the actual commission of the offense.

There was a total failure of corroboration.  See *State v. Wheeler*, 116 Iowa 212.

17. RAPE: assault with intent: instructions: included offenses: assault and battery.

XI.  We do not agree with the contention that there should be a reversal because the evidence is insufficient to sustain the verdict as to the *corpus delicti*.  But we have to consider the evidence in another connection, not to determine what it proves or disproves, or to weigh it, but to determine whether it is so conclusive of guilt as to make errors in the trial nonprejudicial,—more concretely, whether the evidence of the major offense charged is so strong as that the court was justified in not submitting assault and battery.  If this should have been submitted, the error is not cured by the fact that simple assault was submitted.  *State v. Barkley*, 129 Iowa 484, at 486.

It is settled in this jurisdiction that, where the charge is assault with intent to rape, assault and battery need not be submitted unless the indictment charges force.  But the indictment in this case is that defendant made the assault with intent to ravish "by force and against her will."  We think that included offenses must be submitted unless there is such failure of evidence to sustain them as that, if the prosecution were for the included offense, a verdict must be directed for the defendant.  The question that remains is, therefore, whether the evidence so fails to prove force as that a verdict could be directed for defendant were he charged with assault and battery.  It certainly is not in that condition.  The prosecutrix testifies in the plainest terms to the use of force, such as grasping her by the arms, throwing her down on a cob pile, holding her down there by force, proceeding at all times against her fighting and

utmost resistance; that he held her upon the cob pile with his hands; that he tore her dress down on top, and caught her on top with his hand after he had her clothes open; that he raised her skirts and exposed his sexual organs; that her hair was much torn and disheveled by being held upon the cob pile and assaulted there. It is idle to go further into detail. It is beyond all question that, since the jury believed the prosecutrix, there was enough evidence here to sustain a verdict for assault and battery, if one had been returned.

## 11-a

As to the related question, whether the evidence was so conclusive of the major offense as that it was no error to stop with it, we have to say that enough appears to have left it fairly for the jury to find a lower degree of offense upon the evidence if so minded. She made no outcry, though Tigges was in easy reach of her voice while she was being assaulted, as she claims. After, according to her testimony, the evil intent of the defendant had been made plain, she, knowing that she could go into the house and lock the doors, did not do so, but remained where she could be assaulted. She could have called help by telephone and did not. When the defendant left, he bade her good-bye, and she, according to her own story, answered: "Yes, good-bye, you hog." In speaking of the assault to various persons, she showed no feeling and did not cry. She was seen immediately after the alleged assault, and, according to some of the testimony at least, was not breathing fast and showed no signs of excitement; did not appear to be scared; no disarrangement of her hair or flushing of her face was perceived, and she seemed perfectly calm. According to prosecutrix, both her outer clothing and that of defendant must have been badly stained with blood, yet all who saw them both, before the clothing was changed, saw no such stains.

11-b

That assault with intent to inflict great
18. RAPE: as- bodily injury was not submitted, we think
sault with in-
tent: included was no error. We have held repeatedly that
offenses: great
bodily harm. this offense is not necessarily involved in the
charge of assault with intent to rape, and, at
least once, it should not be submitted at all on such an
indictment.

. To be sure, an assault with intent to commit rape is one
with intent to commit a felony, but it does not follow that,
therefore, it was error not to submit an assault with intent
to commit felony generally. In the very·nature of things,
since an assault is charged which constitutes a felony, it
excludes all other assaults to commit one.

For the error in ruling on challenges to jurors, receiving
the testimony as to complaint made, that of the witness
Thompson, holding there was corroboration, and failure to
submit assault and battery, the cause must be—*Reversed
and remanded.*

GAYNOR, C. J., LADD AND EVANS, JJ., concur.