STATE OF IOWA, Appellee, v. OSCAR SMITH, Appellant.

RAPE:    Evidence—Insufficient Corroboration Per Se.    Corroboration
1    sufficient to carry a charge of rape to the jury is not furnished

by testimony tending to show (1) that the accused, without concealment, and in the daytime, took his illegitimate daughter, the prosecutrix, to a neighboring town, for the actual purpose of purchasing clothing for the prosecutrix, and *apparently* for no other purpose, and that they returned together to the home of the prosecutrix, near 10 or 11 o'clock P. M.; and (2) that, very shortly after said journey, and *prior* and *subsequent* thereto, stains of no particular significance were found upon the clothing of prosecutrix.

**CRIMINAL LAW:** Trial—Instructions in re Reasonable Doubt. It is
2  erroneous to instruct the jury to the effect that "a doubt, *to justify an acquittal*, must * * * arise * * * from a * * * consideration of all the evidence *in the case.*"

*Appeal from Union District Court.*—HOMER A. FULLER, Judge.

OCTOBER 17, 1922.

THE defendant was indicted for statutory rape, and convicted, and from a sentence of imprisonment prosecutes this appeal.—*Reversed and remanded.*

*L. J. Camp,* for appellant.

*E. L. Carroll,* County Attorney, for appellee.

FAVILLE, J.—The prosecuting witness is the illegitimate daughter of the appellant. She was sixteen years old on March 17, 1921, and hence below the age of consent at the time alleged in the indictment. Her mother's maiden name was Merrill, and she bears that name. Her mother is now married to a man by the name of Akins, and the prosecuting witness resides with her mother and stepfather, in the town of Lorimor. The appellant lives in that vicinity, and had called at the Akins home, from time to time, to see the prosecutrix. He recognized her as his daughter.

1. RAPE: evidence: insufficient corroboration *per se.*

About the middle of September, 1919, the appellant interviewed the truant officer at the public schools at Lorimor, and stated to him that he wished to take the prosecuting witness to Creston, to get her suitable clothes for her to attend school. The mother testified that the appellant asked her if he could take

the girl to Creston to get her some clothes, and the mother gave her permission for him to do so. He went to the Akins house on the day in question and got the prosecutrix, some time in the forenoon, and they drove together to Creston. The evidence showed that they arrived at Creston about noon, where they had their dinner, and afterward did some shopping; that the appellant purchased a coat, some winter underwear, and stockings for the girl, costing about $20. She testified that, in the afternoon, he asked her to go to a show, but that she objected, and did not want to go, and that they started home toward evening. The lights were on at Creston when they left. The girl testified that, on the way home, the appellant drove along a byroad near Grand River, and that he stopped his car there and committed the act in question. She testified that they were at this place about 15 or 20 minutes, and then proceeded to her home, and arrived there about 10 o'clock at night. She made no complaint to her mother, or to anyone else, at or near the time, and never told her mother until the following March, when she was found to be *enceinte*. She testified that she saw appellant at Lorimor, the next day after this trip, and that she was out with him again in November following; that he asked her to go riding with him at that time, and she did so; and that he had sexual intercourse with her at that time. A child was born to the prosecutrix on the 25th of August, 1920.

On motion of the appellant, the State elected to rely on the transaction of September, 1919, for conviction.

I. Appellant contends there is such want of the corroborating evidence required by Code Section 5488, in prosecutions of this kind, that he was entitled to a directed verdict on this ground.

In addition to the testimony of the prosecutrix, as above set forth, the State offered the evidence of the truant officer, who testified that the appellant requested of him permission to take the prosecutrix to Creston to purchase her clothes, in order that she might attend school.

The mother of the girl was also a witness in behalf of the State, and testified that, while she lived in Lorimor, the appellant came, off and on, to her house to see his daughter, and that, when he came there, he would sit in a chair and pull her on his

lap and hug her and make over her, and said he thought lots of her. She said she did not think much of it at the time; that, on the day of the trip to Creston, he came to the house and asked the mother if he might take the girl to Creston, to get her some clothes; and that she gave her permission. She saw them drive away some time in the forenoon, and says they got home about 10 or 11 o'clock that night; that she had not retired at that time, and does not remember whether she saw the appellant that night or not. She says that appellant bought the daughter clothes every once in a while. She testified that, during the week of the trip to Creston, she gathered up the washing, including the girl's clothes, and said:

"I didn't notice anything especially, only just kind of a stain on her clothes,—kind of yellowish color, bloody color."

It appears that the mother had been a witness at the preliminary examination, and also at a former trial of the case; and there is some confusion in her testimony with regard to the stains which she claims to have seen on the girl's clothing. She at one time testified that she observed the stains along about the middle of March. She was asked the following question on cross-examination:

"And you testified before Adam Pickett, on the 30th of last July, that she had her monthly periods right along up until the first or middle of March, didn't you? A. That is what I said. I just noticed the stain in her clothes, and that is what I went by. I supposed she was all right."

She also testified:

"I noticed stains on her clothes two or three different times."

On cross-examination, she was asked:

"Now, when you were talking about those stains to the jury last term, you were talking about the stains that you noticed in March, were you not, or about the first or the middle of March? A. Yes, sir, somewhere along there."

She also testified:

"Q. And you didn't have any suspicion about these stains' meaning anything? A. No. Q. Until after this case was tried in the district court last January, did you? A. No, sir."

Also, on cross-examination, she testified:

"Q. But you didn't see anything unusual, now, about her clothes in September or any other time up until the first of March, that aroused your suspicions, did you? A. No, I don't think so."

The court examined the witness as follows:

"I don't know whether I understand this witness's testimony or not. Did you observe stains in September, 1919, on the clothing of the prosecuting witness? A. Just noticed a stain on her underwear when I went to gather up the clothes to wash, was all. The Court: That was in September, 1919? A. Yes, sir. She was all right after that."

Part of her evidence in the former trial was introduced, and it appears therefrom that she testified at said time that the girl's clothes were stained at two or three different times. She says:

"I thought she was all right. I didn't think anything more about it. The last time I remember was last March—seeing any stains upon her clothes. The stains were kind of bloody-like on her drawers. Q. You had seen bloody stains on her clothing before? A. Yes, sir, and afterwards."

Akins, the stepfather, testified that the appellant asked him about taking the girl to Creston to buy her clothes and books, and that he told him that it would be all right to do so. He says he never saw anything out of the way in the actions and conduct of the appellant toward the girl; that appellant recognized her as his daughter; and that he never heard or saw anything between the appellant and the girl at any time that in any way aroused his suspicion that there was anything wrong between them.

The foregoing is the substance of the testimony relied upon by the State as the basis for corroboration of the prosecutrix. It is contended that the evidence of corroboration is sufficient to carry the case to the jury, chiefly on two points: (1) That the finding of the stains upon the clothing of the girl in September is corroborative; (2) that corroboration is to be found in the fact that the appellant designedly and intentionally created the opportunity to commit the act, by taking the girl to Creston.

As to the first of these, we have read and reread the entire record of the testimony of the mother of this girl, in respect to the stains on the girl's clothing, and we are forced to the conclusion that this testimony is wholly insufficient, as corroboration of the testimony of the prosecutrix. On a previous examination, the mother had testified with regard to seeing stains on the girl's clothing at various times until in March, 1920, and that, shortly thereafter, the girl admitted to the mother that she was pregnant. She finally testified that she observed stains on the girl's clothing some time in September, and fixes it during the week that the girl made the trip to' Creston; but testified that it created no suspicion at the time, and that she had seen stains on the girl's clothing both before and after this time. There was nothing about the character of the stains themselves that aroused any suspicion on the part of the mother, enough to invoke an inquiry, and it is very apparent that there was nothing about the character of the stains that she testified she discovered in September that differed from the stains which she had seen previously, and observed afterward, upon the clothing of the girl, up until March, 1920. There is nothing to indicate that the stains observed by the mother were other than the stains she observed at other periods on the girl's clothing. The testimony of this witness with regard to the condition of the girl's clothing could not fairly and reasonably be said to in any way corroborate the prosecutrix, or tend to point out the appellant as the person who had committed the offense charged.

It is insisted that the appellant created the opportunity to commit the act complained of, and that there is corroboration in this. It is suggested that there is evidence of corroboration in the time that was taken in making the trip from Creston to Lorimor. The difficulty with this is, however, that the prosecutrix herself claimed that, on this trip, which took several hours, the parties were detained not to exceed 20 minutes,—perhaps not more than 10,—and that the time of their arrival is placed somewhat indefinitely as being about 10 or 11 o'clock; so that the time occupied on the trip is uncertain.

Is there corroboration of the prosecutrix in the fact that her father took her to Creston for the purpose of buying clothes for her,—which he did,—and then brought her home about 10

or 11 o'clock at night? We have repeatedly declared that mere opportunity is not enough to furnish the necessary corroboration required by our statute. *State v. Kessler,* 189 Iowa 567; *State v. Chapman,* 88 Iowa 254; *State v. Wheeler,* 116 Iowa 212; *State v. Egbert,* 125 Iowa 443. We have also held that:

"While mere opportunity to commit such an offense does not of itself amount to corroboration, yet if this opportunity was of defendant's creation, and made with apparent deliberation, this, with other circumstances tending to connect him with the offense, should be considered in determining whether or not he is the guilty party." *State v. Crouch,* 130 Iowa 478.

In *State v. Waters,* 132 Iowa 481, and in *State v. Kessler,* supra, we reiterated the rule.

An examination of our cases recognizing this rule will disclose that in each of them there has been something about the creation of an opportunity and the circumstances attending it that, in and of itself, was suggestive, and sufficient, with other circumstances, to take the case to the jury on the question of corroboration. Unless we are to hold that the mere creation of an opportunity, in and of itself, is sufficient to constitute corroboration, we are forced to the conclusion that corroboration is lacking in the instant case. The fact that the appellant took his own daughter to an adjoining town, for the purpose of buying her clothing, and returned with her at 10 or 11 o'clock at night, cannot be held to be such a suggestive circumstance or a deliberately planned opportunity as would furnish the necessary corroboration required in actions of this kind. The undisputed evidence shows that the appellant told the truant officer that he expected to take the girl to Creston, for the purpose of getting her clothes. He asked her mother and stepfather, and, with the consent of all parties, took her there for that purpose, and did buy her clothes, and did bring her home at a not unreasonable hour. There is no claim of any threats or inducements or anything of the kind, to persuade her to make no complaint, except that she says she told appellant that she "would tell the folks," and he said, "No, you will not." When prosecutrix got home, her mother was still up, and at no time did the girl make any complaint whatever in regard to the transaction. Outside of the testimony of the girl herself, there is

no proof whatever that any person had intercourse with her in September, 1919. She gave birth to a child on August 25, 1920; but that fact is not corroborative of a claimed act of intercourse in the middle of the preceding September, the date which the State elected to rely upon for conviction.

The defendant did not testify as a witness in his own behalf. That is a circumstance which the jury, under the statute, could not consider, and to which we can give no weight. A wicked and heinous offense has been committed against this girl. The legislature has seen fit to enact a statute which makes corroboration in cases of this kind absolutely essential. We have no other alternative than to uphold and enforce that statute, even though a guilty man may escape punishment. We cannot find in the record in the instant case any such corroboration as the law requires; and it therefore follows that, on the record as made, the appellant was entitled to a directed verdict. *State v. Chapman,* supra; *State v. John,* 188 Iowa 494; *State v. Wheeler,* 116 Iowa 212; *State v. Powers,* 181 Iowa 452.

II. Complaint is made of the instruction on reasonable doubt. In this instruction, the court said:

"A doubt, to justify an acquittal, must be a reasonable

2. CRIMINAL LAW: one, and must arise in the minds of the jurors
trial: instruc-
tions *in re* rea-   from a candid and impartial consideration of
sonable doubt.    all the evidence in the case."

This instruction should not have been given in this form. In the first place, the expression, "a doubt, to justify an acquittal," should never be used in an instruction of this kind. In *State v. Phillips,* 118 Iowa 660, we said:

"In the opinion of some members of the court, the expression 'to justify an acquittal,' though it has the support of precedent, is unfortunate, and should be avoided, as being open to the interpretation that the jury starts with the primary obligation to convict the accused, unless some reasonable doubt arises to justify a verdict of not guilty."

Again, in *State v. McCausland,* 137 Iowa 354, we disapproved of an instruction containing this phrase. It should not have been given, and trial courts should avoid the use of this unfortunate phrase.

Again, the instruction is faulty in advising the jury that a

doubt must arise from a consideration "of all the evidence in the case." In *State v. Smith,* 192 Iowa 218, referring to an instruction of this kind, we quoted with approval the following from 16 Corpus Juris 997, Section 2411:

"As a general rule, an instruction that a reasonable doubt must be one suggested by, or arising out of, the evidence adduced is erroneous, as it excludes all reasonable doubts that may arise from the lack or want of evidence."

A reasonable doubt may, and generally does, arise from the lack or want of evidence in the case. We cannot approve of an instruction in this form.

The judgment of the district court is reversed, and the cause remanded for new trial.—*Reversed and remanded.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.