STATE OF IOWA, appellee, v. MILO HOOK, appellant.

No. 47777.

(Reported in 45 N.W.2d 858)

FEBRUARY 6, 1951.

Garrett & Bown, of Corydon, and W. O. Moore, of Seymour, for appellant.

Robert L. Larson, Attorney General, Don Hise, First Assistant Attorney General, and Hugh G. Guernsey, County Attorney, for appellee.

HAYS, J.—Defendant was indicted, tried and convicted of the crime of statutory rape. From a judgment accordingly, he has appealed. Insufficiency of the corroborating evidence is the sole proposition submitted as a basis for a reversal.

The prosecuting witness, Betty Lou Myers, was thirteen years of age at the time of the alleged offense. The defendant was forty-four years old, married and has a family.

In December 1948, Betty, her father and younger brother, Eugene, were living on a farm near Centerville. Defendant and Alva Myers, Betty's father, were engaged in cutting timber near the farm and part of the time the defendant stayed at their home. He frequently took the family about in his truck, and often took Betty and Eugene to school. The Myers home had two rooms downstairs and two up. Betty slept in one of the upstairs rooms and Eugene and defendant used the other. In entering the room used by the defendant it was necessary to pass through the room where Betty slept. In March 1949, the Myers family moved to Iconium and were living there at the time of the trial. Defendant and Alva Myers continued to work together, part of it being on R.E.A. at Bloomfield. He continued to be a frequent visitor at the home and still took them places in his car. During the summer of 1949, Betty spent considerable time with her mother, Mrs. Carlisle, who lived in Bloomfield, and some time with her grandfather and stepmother in Stockport. When working in Bloomfield Mr. Myers and the defendant changed their clothes at the Carlisle home.

Betty testified that while they were living on the farm defendant sometimes came into her room at night and had intercourse with her; she at no time made an outcry and told no one about it; that after they moved from the farm these acts were continued; in July 1949, she realized that she was pregnant and told the defendant about it and that he said nothing; in March 1950 she gave birth to a child. She further testified that she had never had intercourse with anyone but the defendant and that she did not go with anyone; that while attending a carnival at Centerville she went for some rides with a man, and that on June 24 she went to Centerville to a carnival and returned home with a man from Iconium, arriving about 2 a.m.

Eugene testified that the defendant frequently got up at night, went downstairs and later came back to bed. Also: "Q. Did you ever hear any talking in Betty's room when that happened? A. No, not that I know of. Q. Anything at all? Did you hear anything when Milo went into Betty's room? A. Just one night I heard her holler, and that is all. Q. You heard her holler? A. That is right. Q. And then what happened after that? A. Oh, I heard somebody going downstairs, and that is all. Q. Did you see Milo Hook after that? A. Yes, he went downstairs, and he—in a little bit he came back up and came in my room and got in bed."

Mrs. Della Myers, Betty's grandmother, testified that from May until September 1949 she lived with Alva and his family in Iconium; that she frequently saw the defendant about the home but never saw anything wrong.

Mrs. Leona Myers, Betty's aunt, lived with them in August 1949. She stated that she saw the defendant about the home; that once she saw Betty on his lap in the truck and that she had kissed and hugged him.

Alva Myers testified that the defendant was frequently at his home; that they worked together and he often took them places in his truck; that usually when Betty went in the truck Eugene was with her; that he had never seen anything wrong, and that he did not know of Betty going with anyone.

The foregoing constitutes the material testimony offered by the State. At the close of the State's case, upon motion by the defendant, the court ordered the State to elect as to what act it

would rely upon. It elected to stand on the act in February at the Myers home near Centerville. The defendant testified that at no time had he ever had intercourse with Betty. He also stated that since 1945, due to operations at the Mayo Clinic, it was necessary for him to go to the toilet two or three times a night.

It will be noted that the only testimony that in any way tends to connect defendant with the offense prior to August 1949 is the statement of Eugene, other than his presence in the Myers home. While the fact that he passed through Betty's room whenever he went downstairs created the opportunity at the time and place relied upon by the State, this act is as consistent with innocence as guilt when you consider the location of the rooms and his statement as to his physical condition. State v. Brundidge, 204 Iowa 111, 214 N.W. 569. Mere opportunity alone does not corroborate the testimony of the prosecutrix. State v. Smith, 194 Iowa 639, 190 N.W. 27; State v. Howard, 230 Iowa 365, 297 N.W. 821. Opportunity, if self-created and accompanied by suggestive acts and circumstances, may be sufficient. State v. Waters, 132 Iowa 481, 109 N.W. 1013; State v. Lahmon, 231 Iowa 448, 1 N.W.2d 629. Such is not the case as shown by this record. The only other testimony tending to connect the defendant with the offense is the testimony of the aunt and grandmother as to the several acts in August 1949.

The State contends that added to the above testimony is the definite statement by Betty that she never had intercourse with anyone but the defendant and that because of the birth of the baby there is no question but what Betty had intercourse with someone. It is of course true that the birth of the child shows that someone had intercourse with Betty. However, outside of her testimony, there is no proof whatever that any person had intercourse with her in February 1949, the date selected by the State. She gave birth to a child on March 31, 1950, but that fact is not corroborative of a claimed act of intercourse by anyone in February 1949. State v. Smith, 194 Iowa 639, 190 N.W. 27. It is also true that Betty testified that she did not go with anyone, and the members of the family say that they did not know of her going with anyone. However, Betty testified as to two different times she was with other men at carnivals, one of them being in June 1949. The birth of the child in March

1950 would seem to indicate that someone had intercourse with her about this time. State v. Stevens, 133 Iowa 684, 110 N.W. 1037, cited by the State is not in point; neither is State v. Waters, 132 Iowa 481, 109 N.W. 1013, claimed by the State to be similar to the instant case in point, as there the opportunity was self-created and accompanied by very suggestive acts.

██ ██ All other testimony which in any way tends to connect the defendant with the offense deals with acts of familiarity that took place in August 1949, seven months after the alleged offense. While there is some dispute among the authorities as to whether subsequent acts are corroborative of a charge of rape, the weight of authority seems to be that they may be if not too remote and if in some way connected with it. 22 C. J. S., Criminal Law, section 691(8), page 1165; State v. Beltz, 225 Iowa 155, 279 N.W. 386; State v. King, 117 Iowa 484, 91 N.W. 768. Assuming that the testimony in question is connected with the offense in February 1949 it is too remote in point of time to have any real probative value.

██ Finding, as we do under this record, that there is a failure of evidence legitimately having the effect of corroborating the testimony of the prosecutrix as to defendant's connection with the offense, the judgment of the trial court should be and the same is reversed.—Reversed.

WENNERSTRUM, C. J., and MULRONEY, SMITH, BLISS, THOMPSON, and OLIVER, JJ., concur.

MANTZ, J., not sitting.