STATE OF IOWA, appellee, v. ALBERT W. KELLY, appellant.

No. 49438.

(Reported in 91 N.W.2d 562)

1220

█

J<small>ULY</small> 28, 1958.

McManus & McManus, of Keokuk, for appellant.

Norman A. Erbe, Attorney General, Freeman H. Forrest, Assistant Attorney General, of Des Moines, and Robert B. Dickey, Deputy County Attorney, of Keokuk, for appellee.

T<small>HOMPSON</small>, J.—Defendant's appeal from his conviction of rape of a female child under the age of sixteen years, as defined by section 698.1 of the Code of 1954, is based upon four alleged errors. The first concerns the denial by the trial court of defendant's motion to require the State to produce copies of any statements, reports, investigations, confessions, and other evidence it intended to use in the prosecution. The second is based upon what is alleged to have been undue limitation of the cross-examination of a State's witness. The third assignment of error is lack of corroboration of the testimony of the prosecuting witness, as required by section 782.4, Code of 1954. The fourth assignment complains of one of the court's instructions. We shall discuss them in order.

I. On the same date the indictment was returned the defendant moved the court to require the State "to make available to him copies of all statements, investigations, reports and other evidence, including confessions, if any, that the State intends to

use in the prosecution of the above matter." This motion was denied. During the redirect examination of the prosecuting witness the defendant moved the court to require the State "to furnish him with a copy of any statements made by the prosecutrix for the purpose of possibly recalling her for further cross-examination." This motion was also denied.

The defendant contends denial of these motions was error, basing his claim chiefly upon Jencks v. United States, 353 U. S. 657, 669, 77 S. Ct. 1007, 1 L. Ed.2d 1103. While the defendant's motion first above referred to claimed a right to inspect the demanded writings under "due process of law", we are satisfied the United States Supreme Court has not placed its holdings upon that basis. It has adopted a rule of evidence. In Gordon v. United States, 344 U. S. 414, 420, 73 S. Ct. 369, 374, 97 L. Ed. 447, it is said: "The question to be answered on an application for an order to produce is one of admissibility under traditional canons of evidence * * *." Mr. Justice Clark, dissenting in the Jencks case, remarked: "This fashions a new rule of evidence which is foreign to our federal jurisprudence." See page 680 of 353 U. S., page 1019 of 77 S. Ct. Reference is also made in the Gordon case, page 418 of 344 U. S., pages 372, 373 of 73 S. Ct., to opposite rules followed in some state jurisdictions, without any intimation that such courts are bound by the federal holdings. In fact, the entire picture presented by the Jencks and Gordon cases is that under certain conditions and with certain limitations the defendant is entitled as a matter of procedural right to inspect documents for the purpose of possible impeachment.

The significance of the foregoing discussion lies in the fact that if the Jencks case were based upon the due process clause of the Federal Constitution, as suggested by the defendant, it would be binding upon state courts; if based upon a rule of evidence or procedure it is not. As we view the matter we are not bound to follow the Jencks case, but may determine for ourselves, when the question is directly presented, whether we will do so.

But this decision is not required at this time. Even under the Jencks case the ruling of the trial court was correct. The essential requirements for an order to produce documents for

inspection are thus stated: "The necessary essentials of a foundation, emphasized in that opinion [Gordon v. United States, supra], and present here, are that 'the demand was for production of * * * *specific documents and did not propose any broad or blind fishing expedition* among documents possessed by the Government on the chance that something impeaching might turn up. Nor was this a demand for statements taken from persons or informants not offered as witnesses.' " The emphasis was added by the court in the Jencks case in quoting from the Gordon case. See Jencks v. United States, supra, pages 666, 667 of 353 U. S., page 1012 of 77 S. Ct. It also appears that the demand must be for documents shown to be in existence. Gordon v. United States, page 418 of 344 U. S., page 373 of 73 S. Ct.

■ It is evident that the first demand in the case at bar was not for specific documents. It was a proposal for a " 'broad or blind fishing expedition.' " It was made before the trial commenced and so before it could be known what witnesses would be offered, or whether the statements, reports and confessions demanded might prove to be from " 'persons or informants not offered as witnesses.' " In fact, it does not appear that any such writings as were demanded, either before the trial began or during the examination of the prosecuting witness, were in existence. The record is barren of any showing that anyone made any written statements, reports, confessions or other writings. Before copies can be furnished there must be or have been originals.

We recognize the force of the statement quoted by the defendant from the majority opinion in the Jencks case: "* * * the interest of the United States in a criminal prosecution '* * * is not that it shall win a case, but that justice shall be done.' " This does not mean, however, that the scales must be weighted in favor of the defendant. The prosecution has certain rights which should be respected; it is equally entitled to a fair trial.

■ II. The next complaint is that the cross-examination of Dale Louis Kunkel, called as a witness for the State, was unduly restricted. Kunkel was a friend of the defendant, with whom he had spent several hours of the day prior to the time of the alleged rape. He was later called as a witness for the defendant

and testified fully. The defendant had the benefit of his version of the facts. It is true the cross-examination was perhaps too strictly limited. But it is not a case where the defendant was forced to call a possibly hostile witness as his own because of undue restriction of cross-examination. Kunkel was obviously a friendly witness for the defendant. Nor did his testimony when called by the State lend much, if any, aid to the prosecution. See Skinner v. Neubauer, 246 Minn. 291, 74 N.W.2d 656, 659, 57 A. L. R.2d 1005. We find no prejudicial error here requiring a reversal.

III. By motions for peremptory verdict at the close of the State's evidence, renewed at the close of all the evidence, for arrest of judgment and for new trial, the defendant raised the question of lack of corroboration of the prosecuting witness, as required by Code section 782.4. As this section is vital in the case, we quote the material portions: "The defendant in a prosecution for rape, or assault with intent to commit rape, * * * cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense."

We have many times pointed out that the corroboration is not sufficient if it merely tends to prove the commission of the offense; it must connect the defendant with it. Some review of the evidence becomes necessary for an understanding of the situation in the case at bar.

The prosecutrix, a girl age eleven years, with her sister age seven, left their home on Sunday morning, September 15, 1957, for the supposed purpose of attending Sunday school. But their good intentions fell by the wayside, and they stopped at a building in Keokuk known as Bunch's Hatchery. Their grandfather, Cecil E. Floyd, had an apartment on the second floor of the building, where he was employed as a laborer. The girls did not find him at home. They looked through the building for him. Then they played on the elevator for a time, went across the street and bought a bottle of pop and returned and played again on the elevator. Some other children came and played with them; then they went again across the street for a drink of water.

When they returned they saw a red truck parked in front of the building. Apparently this was the defendant's vehicle. When they entered the building they saw a man (Kunkel), who asked them where their grandfather was. The prosecutrix said she did not know. The defendant, who was known to the girls, then appeared, and was asked by the prosecutrix if he "knew where Grandpa [Floyd] was." He replied in the negative.

Up to this point there is no contradiction in the evidence. From here, however, the facts as to what transpired in the building are in dispute. The prosecuting witness said that when her small sister said "Let's go up on the elevator" the defendant said to the prosecutrix "Let's you and me go up on the elevator"; and she then went with Kelly on the elevator to the third floor, and from there up a stairway to the fourth floor. Here she details the attack which she says took place. The defendant admits going on the elevator with the prosecutrix to the upper floors of the building for the purpose of looking for Floyd, but says she went along because she "wanted to go too." He denies any molestation, but says he at no time so much as touched the girl.

The prosecutrix says that after the rape they returned to the floor where the others were, and Kelly and Kunkel shortly left. The prosecutrix then told her sister what had happened. They played on the elevator again until about four o'clock, then some other children came and they played until five or five-thirty.

There is evidence that the prosecutrix "walked funny" that evening. She first told her grandfather what had happened, and took him to the fourth floor of the building, where he observed prints of a body in the dust. Her clothes were dirty. She was taken to a doctor who testified that upon examination he found "the introitus of the vagina was red and irritated and there was a slight abrasion on the left labia. I found the hymen intact." On cross-examination he said: "The things I observed could have been caused by some other sharp or blunt instrument or could have been self-inflicted."

We have set out the substance of the material evidence and conclude there is no corroboration of the prosecutrix' testimony which fairly connects the defendant with the offense of rape, if such offense was in fact committed. Mere opportunity

does not, in itself, furnish the necessary corroboration. State v. Lahmon, 231 Iowa 448, 451, 1 N.W.2d 629, 631, and citations; State v. Hook, 242 Iowa 255, 258, 45 N.W.2d 858, 860; State v. Seales, 245 Iowa 1074, 1080, 65 N.W.2d 448, 451. It is true that if the opportunity was created by the defendant it will create a jury question on corroboration. State v. Smith, 194 Iowa 639, 645, 190 N.W. 27, 29; State v. Powers, 181 Iowa 452, 468, 164 N.W. 856, 861. The prosecutrix here testified that the defendant suggested that she accompany him to the upper floor of the building, and when her small sister wished to go also he in effect dismissed her request. But no one corroborates her in this version. It is denied by the defendant, and the account related by Kunkel says no more than that the prosecutrix and defendant went away and returned in five or ten minutes. There was a possible legitimate purpose for the trip; the attempt to locate Floyd. The prosecutrix cannot be permitted to furnish her own corroboration.

Except for the evidence of the prosecuting witness there is nothing more than a showing of mere opportunity here. We have said that "Bruises and other physical evidences of an assault upon the person of the victim cannot ordinarily be of any aid in identifying the one who made them, although they confirm and corroborate her statement that the crime was committed. Her prompt complaint of the attack is also not statutory corroboration * * *." State v. Lahmon, supra, page 451 of 231 Iowa, page 631 of 1 N.W.2d. So with the dirt upon the prosecutrix' clothing in the instant case; the imprint of a body in the dirt upon the floor has no tendency to connect the defendant with the crime. Nor does it appear the defendant was the only one who had the opportunity to make the attack, or inflict the injuries to the girl's person. She had been away from home all of the day and in the company of others part of the time.

The State relies much upon State v. Lahmon, supra, and State v. McCausland, 137 Iowa 354, 113 N.W. 852. The Lahmon case contains an exhaustive analysis of the question of the required corroboration; but it appears there were many elements present there which were entirely lacking here. The defendant as a witness in his own behalf did not deny many material parts

of the prosecutrix' testimony. He had clearly picked her up in his car late at night, and had taken an unusual and unnecessary route to take her to her home; a route which ended with his automobile mired in the mud on an unpaved, unlighted street. He had driven past her home without stopping. She had been only in the company of the defendant, in his car, during the time the bruises and other evidences of assault on her person must have been inflicted.

In the McCausland case the defendant accompanied a young girl late at night up a flight of stairs into a darkened room. No good or proper reason appeared for this; and in addition we said there were other circumstances "significantly pointing" to corroboration, without stating the details. State v. McCausland, supra, page 357 of 137 Iowa, page 853 of 113 N.W. Neither the Lahmon nor the McCausland case aids the State.

In State v. Seales and State v. Hook, both supra, the facts were similar to those now before us, although we think they were somewhat stronger in favor of the State. But in each case we held that, although opportunity was shown, there was no evidence it was created by the defendant, and a legitimate purpose appeared. We are constrained to hold that the prosecuting witness was not corroborated within the meaning of section 782.4.

Other errors urged are not likely to arise upon another trial, and we do not discuss them.—Reversed.

GARFIELD, C. J., and BLISS, HAYS, OLIVER, PETERSON, and WENNERSTRUM, JJ., concur.