STATE OF IOWA, Appellee, v. BERT ASHURST, Appellant.

No. 40060.

June 23, 1930.

Lewis & Lewis and Spence & Beard, for appellant.

John Fletcher, Attorney-general, and A. I. Smith, County Attorney, for appellee.

KINDIG, J.—It is charged in the indictment that the defendant-appellant, on or about March 10, 1928, "willfully and feloniously" had sexual intercourse with and "carnally" knew and abused one Annabelle Ashurst, "a female child under the age of 16 years." To this indictment the defendant pleaded not guilty. After a trial to the jury, during which evidence was introduced by both the State and the appellant, as defendant, a verdict of guilty was returned, and the appellant was sentenced to serve an indeterminate term in the state penitentiary of not more than 20 years.

Appellant sets forth twelve grounds for reversal, but we find it necessary to consider only the one which relates to the insufficient corroboration of the prosecutrix. Under the statute, it is essential that there be corroboration which tends to connect the defendant with the commission of the offense. Section 13900, 1927 Code.

"The statute is imperative, and leaves us without any discretion in the matter. A conviction cannot be supported in a case of this kind upon the uncorroborated testimony of a prosecuting witness." State v. Lamberti, 200 Iowa 1241 (local citation 1244).

Mere opportunity is not enough to supply the corroboration required by statute. State v. Carter, 196 Iowa 738. Corroboration must be such as will tend "to single out and designate the defendant as the guilty one." State v. Greiner, 203 Iowa 248

(local citation 250). In other words, to put the thought in the language of the statute, the corroborating evidence or circumstances must tend "to connect the defendant with the commission of the offense."

Claim is made by the appellant that the record in the case at bar does not contain such corroborating evidence. That is the question for determination. A review of the material facts and circumstances at this juncture is necessary.

Bert Ashurst, the appellant, owns a farm in Ringgold County, near the city limits of Mount Ayr. On this farm, appellant and his wife resided together for many years. While thus living on the farm, and because no children were born to them, they desired to adopt two little girls. For that purpose they applied to the Children's Home Society of Des Moines. Responding to the request of appellant and his wife, the Children's Home, on or about April 2, 1923, first placed the prosecutrix, Annabelle, and later her sister, Myrtle, in appellant's home. These children had been released by their natural father to the Children's Home on September 22, 1922. After remaining in appellant's home for several weeks on probation, Annabelle and Myrtle were legally adopted by appellant and his wife, October 1, 1923. Henceforth both girls were cared for by appellant and his wife on the farm aforesaid as if they were the natural children of this couple. Myrtle, at the time named in the indictment, was about 12 years old, while Annabelle then was 14 or 15 years of age.

Annabelle, the prosecutrix, was not always obedient, and appellant and his wife had difficulty in controlling her. Nora Ashurst, appellant's wife, died August 15, 1927, survived by her husband and the two adopted children. Subsequent to the death of his wife, appellant obtained different housekeepers, to assist him in caring for the girls, and continued living with the children on the said farm. First, appellant's mother came into the home, and remained there for several months. Later, Mrs. W. E. Zack, kept house for appellant and his adopted children, until about January 15, 1928. Then Miss Ada Whisler, a schoolteacher, took charge of the household, and, according to her testimony, remained with the family until sometime in August, 1928.

Apparently the girls did not do good work at school, and

they were constantly reprimanded by their father. The prosecutrix became indiscreet in her association with various men, and confessed to the appellant that she had illicit relations with at least one of them. Because of Annabelle's conduct in this regard, appellant protested, and attempted to make her understand the wrong of such actions. Such is a brief preliminary history of appellant and Annabelle, the prosecutrix.

It is claimed by the State that the appellant had sexual intercourse with his adopted daughter Annabelle on or about March 10, 1928. Proof of the charge is limited to the testimony of Annabelle. Support and corroboration of Annabelle's testimony, if any there is, must be found in the statements and declarations of Myrtle. No reliance is made upon any other evidence or circumstance by the State. Many witnesses, including at least one woman who taught Annabelle in the public schools, testified that her reputation in the community for truth and veracity was bad. According to Annabelle in her final testimony, after she was called to the witness stand for the second time, illicit relations between herself and foster father continued over a period of many months. When before the grand jury, however, Annabelle testified that there had been only three occasions when the appellant was unduly intimate with her. Thus she testified when first put upon the witness stand during the trial in the court below. She was recalled the second time, however, and made the statement previously suggested. Each housekeeper aforesaid testified that appellant at all times conducted himself properly, and was not in any way indiscreet in the presence of Annabelle.

Claim is made by Annabelle that appellant committed the offense named in the indictment at his home during March, 1928. Ada Whisler, the housekeeper before named, declared that she was in defendant's home during said month of March, caring for the girls, and that the appellant was not alone with Annabelle during that time. While the disputed questions of fact are to be determined by the jury, yet it is for the court to say whether there is evidence in the record tending to corroborate, as demanded by the statute aforesaid. *State v. Sells*, 145 Iowa 675; *State v. Lamberti* (200 Iowa 1241), supra; *State v. Greiner* (203 Iowa 248), supra. As above suggested, the

State relies upon the testimony of Myrtle for corroboration. Myrtle, while on the witness stand, said:

"We [the witness Myrtle and her sister, Annabelle, the prosecutrix] were sitting on the porch. Defendant [appellant] called Annabelle, and when he called Annabelle, I went in with her. He took her. [Annabelle's] hand, and called her pet names, and he told me to leave the room. I went to the kitchen, and when I went out of the room, I did not close the door. * * * There was no other person there besides us three."

Parenthetically it is recalled Miss Whisler, the housekeeper, declares that she was present, and that appellant was not alone with Annabelle.

Does Myrtle's testimony, above quoted, tend to connect the appellant with the commission of the offense? Manifestly not. There was nothing in what Myrtle there said which pointed out the appellant as the one who had committed the crime named in the indictment. *State v. Sells* (145 Iowa 675), supra; *State v. Lamberti* (200 Iowa 1241), supra; *State v. Greiner* (203 Iowa 248), supra. Clearly, appellant had a right to call Annabelle into the house. Likewise, it was not indiscreet for him to take her by the hand and call her endearing names. Most foster, as well as natural, fathers do that. She was appellant's adopted daughter. A father would naturally thus conduct himself. No significance appears because appellant asked Myrtle to leave the room. Many reasons suggest themselves concerning why he might honestly and legitimately do this. Possibly the father desired to consult his daughter about her conduct with other men, which apparently worried him. Myrtle's presence would not be desired, in such event. Appellant did not ask Myrtle to close or lock the door when she left. Neither seclusion nor privacy, according to Myrtle, existed·for an immoral act of the nature under consideration. Nothing anywhere appears in Myrtle's testimony to indicate unusual or criminal conduct. Much stronger and more suspicious circumstances present themselves in the *Sells, Lamberti,* and *Greiner* cases, supra, yet in each we said there was no corroboration.

But the State argues that, although opportunity in itself is not corroboration, yet it becomes such when a defendant in a case of this kind creates the opportunity. See *State v. West,*

724

197 Iowa 789; *State v. Kessler*, 189 Iowa 567. Here, however, there is nothing in Myrtle's testimony to indicate that appellant created an opportunity to commit the offense. In fact, so far as her testimony is concerned, it does not appear that an opportunity existed, under the rules of law applicable. As a father, appellant was rightfully in his own house, and Annabelle, his adopted daughter, also was legitimately and properly there. Parents and children must live under the same roof, and parents have a right to interview their children, and, if need be, correct and advise them. This may be done in the absence of other children, and one child may be asked to step aside while a confidential interview is held with the other. That situation obviously does not amount to the creation of an opportunity, as contemplated by the *West* and *Kessler* cases, supra. A careful review of the entire record makes manifest that there is no corroboration in the case at bar, as required by statute, and without it there can be no conviction. Therefore, appellant's motion for a directed verdict should have been sustained, and because it was not, he is entitled to a new trial.

Wherefore, the judgment of the district court must be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, DE GRAFF, WAGNER, and GRIMM, JJ., concur.