STATE OF IOWA, Appellee, v. EDWIN BRUNDIDGE, Appellant.

RAPE: Corroboration—Opportunity Only. Corroboration is quite insufficient when, in its last analysis, the testimony simply demonstrates that the accused had the *opportunity* to commit the offense in his home, which was his place of business.

Headnote 1:  33 Cyc. p. 1498.

Headnote 1:  22 R. C. L. 1225.

*Appeal from Jones District Court.*—F. L. ANDERSON, Judge.

JULY 1, 1927.

Appeal by defendant from a judgment of conviction of statutory rape upon the person of a female under the age of consent.—*Reversed.*

*Edward J. Dahms,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

EVANS, C. J.—The prosecutrix was Theola Hunter, a girl 13 years of age. The indictment charged the offense as having been committed on the 10th day of February, 1926. The evidence for the State was that such offense was committed at the home of the defendant. At the time of the alleged offense, the defendant was 53 years of age. He was a barber by trade, but maintained no shop other than his home. As such, he performed services to a limited patronage, who came to his home. His family consisted of himself and wife. They occupied as their home a one-story house, comprising four rooms. These were a kitchen, front room, and two bedrooms, opening from the front room. The defendant was the uncle by marriage of the prosecutrix, who daily attended the public schools. Her home was a mile distant. The home of the defendant was on the way between the home of prosecutrix and the public school which she attended. On her way to and from school, she habitually stopped for a brief time at the Brundidge home, both morning and evening. Another girl, Viola Miner, a witness for the State, whose home was near the home of the prosecutrix, habitually did likewise. The two girls sometimes came together, and sometimes separately; but each of them habitually made the stop. Viola had a little sister, Ilene, who attended the kindergarten, and was dismissed daily at 11:30 A. M. At that hour, she proceeded to the Brundidge home, and remained there until about 4:30, when Viola would arrive.

On the afternoon of February 10, 1926, Mrs. Stickney, another witness for the State, was at the Brundidge home. With her were her husband and Mrs. Lienen. These three and Mrs. Brundidge left the home shortly before 4 o'clock, to go to a neighboring home, one mile away, intending to be gone a very brief time. Shortly before 4:30, and at about her usual time, Theola (prosecutrix) arrived at the Brundidge home. At that time, no one was present in the home save the defendant. He was lying on the bed in the front bedroom. Upon her arrival, he arose and came into the front room. She asked him to cut her hair, to which request he assented. He went into the other bedroom, usually occupied by his wife, to obtain towels for that purpose. The prosecutrix followed him. Thereupon, Viola Miner came through the kitchen and into the front room. The defendant came out of the bedroom, carrying the towels, and was followed by the prosecutrix, who had not yet removed her hat or coat. The prosecutrix proceeded into the chair in the kitchen, and the defendant proceeded to cut her hair. Viola had come for her sister, Ilene, but Ilene had already been taken in the auto by Mrs. Brundidge and the Stickneys and Mrs. Lienen. Within five or ten minutes after her arrival, Viola left for home, leaving Theola in the barber chair. It was after the departure of Viola, and after the completion of the "hair-cut," that the offense is said to have been committed.

The important question presented to us, upon the record, is whether there was any statutory corroboration of the prosecutrix. Mrs. Brundidge and her company returned within a few moments after the departure of the prosecutrix. This appears from the testimony of the State, as well as from that of the defendant. The State emphasizes two or three circumstances, and relies on these for the statutory corroboration.

The first of these pertains to the alleged locking of the front door. Viola Miner testified, in terms, that, when she came to the house, the front door was locked, and that she came in by way of the kitchen door. The prosecutrix testified that she came in through the front door. The State claims an inference, therefore, that, after the prosecutrix had come in through the front door, the defendant must have locked the same; that, if he did so, he was preparing or creating an op-

portunity for the commission of the offense. The testimony of .
Viola Miner, however, taken as a whole, indicates nothing more
than that she tried to open the front door, and could not, and
therefore assumed that it was locked. She testified, also, that
she usually came in through the kitchen door, and not the front
door, and that she was forbidden to come in through the front
door when it was muddy. The claim that the door was locked
is contradictory to the testimony of the prosecutrix herself.
She came in through the front door, and went out through the
front door, and did neither lock nor unlock the same. The
significance of the alleged circumstance is greatly diminished
when it is considered that the kitchen door was not locked, and
that that was the customary entrance of Viola, and that the
usual time of her coming was already at hand. In other words,
her coming involved no element of surprise.

To say that the door was locked is contradictory to the
testimony of the prosecutrix, rather than corroborative.

The further circumstance relied on is that, when Viola
came into the front room, she saw no one, but saw the bedroom
door slightly ajar. She started into the bedroom, but as she
pushed the door, it met resistance. In so far as this circum-
stance has any significance, it also is contradictory to that of
the prosecutrix. She testified that back of the door was a
chiffonier, from which the towels were taken, and that she
stood between the door and the chiffonier. She also testified
that nothing improper occurred at that time.

The third circumstance emphasized is that Viola asked the
defendant how long it would take to cut Theola's hair, "A
half an hour," he answered. In fact, it took him only about
fifteen minutes to finish the task. The prosecutrix testified
that the defendant asked her to tell Viola to go home. Such
alleged request was testified to only by the prosecutrix. This
could not be regarded as statutory corroboration. When it is
considered that the circumstance testified to by Viola at this
point was antecedent to the alleged commission of the crime,
and would bear, if at all, only on the question of opportunity,
it is too lacking in substance to be regarded as statutory cor-
roboration.

The final circumstance relied on is to be found in the testi-
mony of Mrs. Stickney. This was as follows:

"Mr. Brundidge was there when we returned. He was there alone. Mrs. Brundidge asked him if the girls had stopped. He said they stopped, and he cut Theola's hair. He said the other girl got tired of waiting, and Theola caught her about the tracks."

The argument for the State is that it could not have been true that Theola overtook Viola at the tracks, which were only a block or so distant. If this evidence can be deemed corroborative, it must be because it was in the nature of an admission of guilt. It is not fairly capable of such interpretation.

Upon this record, the question of corroboration resolves itself to this: That the defendant was present at his home at the time in question, and had the opportunity to commit the offense. It is firmly settled that mere opportunity does not meet the statutory requirement. This is quite emphatically so when the alleged opportunity is consistent with innocence and with the ordinary habits and surroundings of the defendant. Upon this record, nothing extraordinary is made to appear, except the alleged commission of the offense itself. The mere opportunity itself presented no sinister aspect. The defendant was in his own home, and the circumstances surrounding him were those that were habitual. The most that can be said is that he might have committed the offense. Even so, the opportunity was very slight and precarious. Mrs. Stickney, a witness for the State, testified that she and her company left at about 10 minutes to 4, and that they returned at about from 10 to 15 minutes to 5. Viola Miner testified that she arrived at 4:30, and left in 5 or 10 minutes. When Viola arrived, the defendant knew she was due to arrive. When she left, he knew that his wife and her company were due to arrive at any moment. They did arrive within a few minutes after the departure of Theola. The case is one which in its circumstances illustrates with peculiar force the wisdom of the statutory requirement for corroboration. In our judgment, such requirement has not been met in this case. Defendant's motion for a directed verdict should have been sustained, on the ground of want of statutory corroboration. Our conclusion at this point renders it unnecessary that we consider other features of the record.

The judgment below must be, and is, accordingly, reversed. —*Reversed.*

All the justices concur.