Clyde **FOSTER**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–12372.

Criminal Court of Appeals of Oklahoma.

Feb. 27, 1957.

Joseph A. Young, William A. Vassar, Chandler, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Tom J. Amis, County Atty., Lincoln County, Chandler, for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Clyde Foster, defendant below, was charged by information in the District Court of Lincoln County, Oklahoma, with the crime of second degree rape, allegedly committed on February 3, 1955, in the High School Superintendent's Office in Meeker, Oklahoma, in the aforesaid county. The crime was alleged to have been committed on the person of Jessie Smith, a female person, to wit: of the age of fifteen years and not the wife of the defendant, Foster. He was tried by a jury, convicted, but the jury being unable to agree on the penalty, left the same to be determined by the trial court which fixed the punishment at three years in the state penitentiary. Judgment

and sentence were entered accordingly, from which this appeal has been perfected.

The defendant raises seven assignments of error in the case at bar, but it will be necessary to consider only two of them. First, he attacks the sufficiency of the evidence to support the conviction, and especially the element of corroboration of the prosecutrix' testimony, and secondly, he complains of prejudicial error in the admission of evidence.

As stated by both the state and the defendant in their briefs:

"While it is the law of this State, as in most others, *were* not modified by statute, that a conviction for rape may be sustained upon the uncorroborated evidence of the outraged female, it is nevertheless equally well settled that the appellate court will closely scrutinize the testimony upon which the conviction was obtained, and, if it appears incredible and too unsubstantial to make it the basis of a judgment, will reverse the judgment."

But, "the great difficulty is in applying the law to the facts." De Armond v. State, Okl.Cr., 285 P.2d 236, 237.

In Weston v. State, 77 Okl.Cr. 51, 138 P.2d 553, 554, the late Judge Barefoot said:

"This is what we mean when we say that cases of this character should not be decided upon technicalities, based upon a fixed policy that the verdict of the jury is final and absolutely correct on every proposition of fact. The doctrine that one may be convicted on the uncorroborated testimony of the prosecutrix has an exception to the rule that is as well founded as the rule itself, and that is that where her testimony is contradictory, uncertain, improbable or she has been impeached, her testimony should then be corroborated. And this corroboration should be of such dignity as to give it weight with the jury upon the question that the actual crime has been committed. It should not

be such slight circumstances as to leave the court and jury to guess or speculate that the crime has been committed and that the defendant is guilty."

Further in the body of the opinion, 77 Okl.Cr. pages 63–64, 138 P.2d at page 558, the learned Judge said:

" 'While a conviction for statutory rape may be had on the uncorroborated testimony of the prosecutrix, this is only warranted when all the other facts and circumstances of the offense are corroborative of her testimony and her statements are not inconsistent or contradictory. Without such surrounding facts and circumstances, the bald statement of the prosecutrix against the defendant would be so devoid of testamental value as to render it unworthy of belief. * * *

" 'It may be said in passing that opportunity may be considered as one of the circumstances in a rape case, but it is not corroboration. In several cases it has been held that the mere opportunity to commit the crime of rape is not sufficient corroboration of the testimony of the prosecutrix that rape was committed. State v. Brundidge, 204 Iowa 111, 214 N.W. 569; Robbins v. State, 106 Neb. 423, 184 N.W. 53; People v. Brehm, 218 App.Div. 266, 218 N.Y.S. 469, 470; State v. Bowker, 40 Idaho 74, 231 P. 706.' "

It is well to point out the strong similarity in the Weston case and the case at bar. In the Weston case, the act complained of was allegedly committed in a public place, on a child eleven years of age, twenty or thirty times, the doors were at all times open, there was no outcry, and no revelation of the alleged crime until several months later. The evidence in support of corroboration was sought through another alleged occasion where opportunity may have been present for the commission of an act of intercourse. This court reversed the Weston convic-

tion for lack of corroboration. Moreover, there was evidence offered in that trial of two prior convictions of undescribed felonies. The Court said that in all probability, reference to the prior convictions was the cause of the conviction had in that case, and on such a basis the conviction should not be sustained.

In the case at bar, the prosecutrix first began working in the defendant's Clyde Foster's office on January 10, 1955, doing secretarial work. The alleged crime, an only alleged act of intercourse with the prosecutrix, was supposed to have been committed on February 3, 1955, just as the prosecutrix started out of the supply closet, just off the superintendent's office. At the preliminary hearing, the prosecutrix testified that the door of the closet was open and it was light therein, and the door to the superintendent's office was open as was the door leading from the outer office into the main hall. In fact, the record of the preliminary hearing shows the doors were all open. Her testimony at the trial was not consistent on this point, but the record as a whole shows the closet door and other doors were open and it was light in the closet at the time of the alleged crime. It further shows that the act, if committed, was effected standing up, and that there was no resistance offered and no outcry made. In the preliminary hearing the prosecutrix testified, "We had an intercourse." At the trial, in an attempt to strengthen the prosecution, she testified, "He forced me to have intercourse." The record as a whole shows she not only made no outcry but she did not complain of the act to any one.

Shortly after the alleged act was alleged to have been committed, a rumor of undisclosed origin was going about that she had had relations with the defendant, Foster. She told her parents it was not true. She called two members of the school board, Mr. Hill and Mr. Honeycutt, and told them it was false. She told Mr. G. V. Williams, State High School Inspector, who had been called to make a thorough investigation by the defendant, that the rumor was without foundation. She told Mr. Williams in the presence of her parents as well as in the presence of other people that the rumor that she had had an affair with an older man was not true. She stated to Mr. McElvaney, in the defendant's presence and about sixteen older students, that the defendant never treated her anyway but as a lady. She told Dr. Mileham, who examined her, that she had never had intercourse with an older man, but had such relations two or three times with a boy her own age. Dr. Mileham's examination revealed she had a vagina like a married woman, " * * * one who had been used to intercourse for a period of time. * * * " He related that when he examined the prosecutrix his nurse was in the room, but the prosecutrix denied that there was any one in the room when the Doctor examined her. Dr. Mileham further stated that the prosecutrix' attitude recorded no embarrassment such as would be generally registered by young girls her age. He said she was unconcerned and this was not normal.

The record reveals that for a considerable time the prosecutrix had been having trouble at home with her family and that on one occasion her father ran some boys away from the house. It further appears that some sixty days after the alleged crime, the prosecutrix had a violent quarrel with her parents, left home, spent the night in the jail, and was later committed to a home in Bixby, Oklahoma. Thereafter, she made the charge herein involved and instituted this prosecution against the defendant.

On re-direct examination for the state, she was asked why she denied the alleged affair with the defendant. She replied, "I did it for his own good. * * * I was afraid there would be trouble, * * and things kept going so strong at home and *I found out I was not the only one."* (Emphasis supplied.) The latter clause contained in the above statement, upon objection, was stricken from the consideration of the jury. The defendant con-

tends, however, that striking it from the jury's consideration would not strike it from their minds and that the injury had already been done. Such a voluntary statement in a case of this character was most prejudicial and may have been the thing that tipped the scales against the defendant. The court's admonition to the jury, though removing the evidentary harpoon in a technical sense, was not sufficient to repair the injury and the impression left on the jury's mind. This alone may have been what caused the jury to find the defendant guilty. As was said in Weston v. State, supra, the least action on the part of the court or the slightest incompetent evidence causes the jury to return a verdict of guilty in close cases, where otherwise the defendant might be acquitted.

We do know, in the case at bar, that the jury was not strongly persuaded on the defendant's guilt or they would not have passed the question of punishment on to the trial court. If the jury had been strongly convinced of the defendant's guilt, the punishment would have been a small matter for their determination.

It is apparent that further exposition of the facts and other inconsistencies of the state's case is not necessary. The record reveals that the prosecutrix was clearly impeached, her conduct following the alleged crime was inconsistent with the charge made later, and the circumstances at the time of the alleged commission make it appear improbable. The contradictory position the prosecutrix maintained so long to so many people renders the state's case so speculative as to require strong corroboration. Self v. State, 62 Okl.Cr. 208, 70 P.2d 1083.

On the question of corroboration, the record discloses that some time in the early part of January, 1955, three girls thought they saw lipstick on the defendant's lips and called it to his attention. The prosecutrix' brother testified that the defendant called him into the office and made inquiry of him with reference to whether his father was carrying a gun for the defendant concerning his alleged relations with the prosecutrix. These incidents, even if true, bear no direct proof in relation to the crime charged herein. On that issue, the foregoing testimony rises no higher than pure speculation. It in no way furnishes corroboration of the prosecutrix' testimony as to the alleged act of intercourse with the defendant. It merely establishes isolated suspicious circumstances that do not definitely prove the alleged crime. Moreover, the testimony of Dr. Mileham is not corroborative. It merely shows that in his opinion she had been apparently having intercourse for some time and that her person appeared to be as a married woman's, which, in face of the record as a whole, is more consistent with her admission as to numerous acts of intercourse with another person or possibly persons. The prosecutrix' denial to the Doctor of having relations with an older man and only with a boy of her own age is by no means corroborative. Moreover, the fact that the defendant may have had opportunity for intercourse with the prosecutrix is not evidence of corroboration. Self v. State, supra; De Armond v. State, supra; Weston v. State, supra.

The latter case, though quite similar factually to the case at bar, is much stronger and was reversed and remanded by the late Judges Doyle and Barefoot and Judge Dick Jones. Therein, the similarity of attempted corroboration clearly appears. The testimony of the little brother greatly exceeds in weight as corroborative evidence that of the lipstick episode in the instant case, and the testimony of the Doctors in the Weston case was certainly no weaker than the Doctor's in this case. Here, the corroboration offered to sustain this conviction rises no higher than mere speculation. It is such slight circumstance as to leave the court and the jury to guess as to whether the crime has been committed and to whether the defendant is guilty beyond a reasonable doubt. On no other basis than beyond a

reasonable doubt should an appeal in a criminal case be affirmed.

The conviction is accordingly reversed and remanded.

POWELL, J., concurs.

NIX, J., not participating.